May I reserve three minutes, please? Yes. I'll try to help you out, but please keep your eye on the clock as well. Okay, thank you. May it please the Court, Stephen Farina on behalf of Appellant PennyMac Mortgage Investment Trust. Under the LIBOR Act, contracts that have fallback provisions containing a benchmark replacement that is not based on LIBOR continue operating according to their terms. This is made clear in the express language of the statute. It's repeated in three different portions of the statute, and it is a principal purpose of the statute to preserve those contracts that are not broken and have within them a mechanism to set an interest rate or a dividend rate after the expiration of LIBOR. The contracts at issue here, the articles supplementary for the PennyMac preferred shares, contain fallback provisions with a benchmark that is not based on LIBOR, and there is no dispute that PennyMac has been applying those provisions in the article supplementary as written and that applying those provisions as written and untouched by the LIBOR Act, it yields a fixed rate, which was the rate that these securities paid for the first seven years of their existence. So PennyMac has complied and is complying with the LIBOR Act. PennyMac is complying with its article supplementary, and there is no basis for a claim under the UCL. So Plaintiff contends that PennyMac's fallback provisions cannot be permitted to operate because a particular fixed rate can never, ever, ever, under any circumstances, even if agreed upon by the parties, be a benchmark replacement under the Act. That is their position, and it needs to be their position for it to be correct. Well, I don't see that last point. Your briefs are very interesting in terms of statutory construction, but my focus is less statutory and more on the contract. So let me start with a question. Is there any LIBOR Act case law that tells us when a replacement benchmark is, quote, clearly defined? Do you know of any case that's helped us, or is this an issue of first impression in the country? I do not know if it's an issue of first impression because that's not an issue that's been disputed. No, but is there any case law that has defined what the phrase clearly defined? There may be. I'm not aware. Okay. So I think, correct me if I'm wrong, we have investors who negotiated securities that contemplate going from fixed to floating. But the logic of your position is that they're never going to get to floating. They're actually going to get a permanently fixed. That's a little hard for me to reconcile. It all turns on what's the fallback that is giving them the opposite of what they negotiated. And in this contract, where do you see that fallback? If you apply the fallback on the waterfall, and this is not contested. I'm just asking you about a contract interpretation at the motion to dismiss stage. Yes. Am I right? We're looking at 4G? Correct. And we're looking at the last sentence? It is the last sentence in the waterfall. Okay, and what's, you didn't put it in the brief much, but what's the prefatory language to the relevant portion of the last sentence? How does that last sentence start? Okay. All right. If there was no such dividend period, meaning a dividend period where you have 3-month LIBOR that applies, the dividend shall be calculated at the dividend rate in effect for the immediate preceding dividend period, which is the fixed rate period. Okay, and I thought the prefatory state, if no New York bank can make three quotes. That's earlier. There's actually multiple levels. There's multiple fallback provisions that you go through. And so there's the screen rate, and then there's polling, and then there's you revert back to the last LIBOR rate, which is what I just read. And there's no preceding LIBOR rate because of this situation, because LIBOR has never been used. The parties here contemplated that LIBOR would go away. I thought that final sentence contemplates what the rest of 4G says, which is if you can't get a quote because computers are down or LIBOR wasn't conducted, if you can't find the banks making the quotes, that's when you'll look before. But the condition precedent is still LIBOR quotes. Am I wrong? I think you are wrong, Your Honor.  I mean, that is not even – Can I follow up with – Sure. I'm sorry. Go ahead. I interrupted you. Well, if you look at the provision, and we do lay this out in our brief, we walk through each of the fallback provisions because you do need to go through each of them. And in their briefing and their briefing below, they have acknowledged that the final fallback provision, which is what we're relying upon, yields a fixed rate. They've expressly conceded that. And I think it does too, but I think the final fallback was contemplating still a world of LIBOR. In other words, it's a legacy contract. It's still thinking all we expect to get is a floating rate. The whole thing we didn't want is a fixed rate forever. So it's very hard for me to see that it's clearly defined that this moved them out of the SOFR world. They had the prescience to think if LIBOR is gone, okay, we'll never get our floating rate. What this provision does is it contemplates a world where LIBOR is not available. It doesn't say whether it's not available for a moment, a week, a year, or forever. And what the contract says is that if LIBOR is not available, you walk through the fallback provisions and you get to a fixed rate. I'll study it closer. You've obviously lived it much more. I didn't read 4G to be clearly defined that it says in a world where LIBOR is gone. I read the 4G final fallback to be in a world where the banks don't give us quotes. We have a temporary fix. In a world where you cannot get a LIBOR quote. Okay, but that's still looking at LIBOR quotes. No, but if LIBOR isn't available, which is the case here, for any reason. Well, that's sort of where I've really come down to wondering at a motion, is it clearly defined for any reason? You've added that language. The parties didn't ever put that language in. They said if you can't get LIBOR quotes, that's the whole 4G section. What's the title of 4G? Well, 4G doesn't have a title in it itself. But it's LIBOR. It's a world of LIBOR quotations. It's defining how you get the LIBOR quotation. LIBOR quotations are addressed in 4G because those are the first two of the mechanisms. You start with the screen rate. Then you go to polling. And if polling is not available, you go to the immediately preceding LIBOR rate. And if that's not available, you go to the immediately preceding rate, which has to be the fixed rate. That's the only circumstance. Well, I agree they contemplated fixed rate, but what I'm having a real struggle with is that these parties that wanted a floating rate actually put in at the very bottom of that section an actual contemplation that they'd accept the fixed rate forever. I just have difficulty seeing that in the language. So I do not believe that it is necessary, that the parties would have to have contemplated the specific circumstances in which a provision like this or a contingency in any contract would be triggered. They merely have to agree that if LIBOR is not available and you go through it. Even for a day or two. It doesn't matter. If it's not available, it doesn't limit it in the contract. It doesn't say if it's unavailable temporarily. It says if it's not available, if you go through the different mechanisms and you cannot get a LIBOR quote, you go to the last one, which everyone agrees points you to the fixed rate. Let me ask you a question because I'm kind of looking at the same provision, 4G, and that very last sentence, if you were then three New York, New York banks selected the company quote rate. So I'm going to ask you a couple of questions pertaining to the very last sentence. Does that set forth one fallback or two? One fallback provision or two? Because it is one sentence with two clauses. They're separated by a comma. And where I began was if there was no such dividend period, meaning a dividend period where you were applying a three month liability. Right. You're reading it as two. It is two. But is there ambiguity here? No. Those are two different occurrences. I'm trying to think of the context. This is in a world where the contracts were negotiated well before the LIBOR Act came out, and I don't know that the parties anticipated that there would be legislation that would then nullify one of the contract provisions. So what I'm wondering is that whether there is a plausible reading by which the rate is tied to LIBOR still when you read this particular provision. No. And no one, none of the parties. Because if there's ambiguity, then we have to then go to whether which law applies and whether it's construed against the drafter, right? The parties haven't. No one's argued that. I understand that. They conceded that this language directs you to a fixed rate. I got you. I got you. If we agree that their interpretation is counter-textual, I still struggle with whether there's ambiguity here and whether eventually this actually sets forth just one fallback provision that's somehow still tied in some way to the LIBOR rate, which would then be nullified under the LIBOR Act. That's my question. I'm laying it on the table. That is not how I read it, and no one has argued that. When I asked you could you read the prefatory sentence, I should have it in front of me. The prefatory clause, it is the clause that she's describing, and you didn't read it. Well, I… It starts with whether or not banks can give quotes. I was asking, there is no last sentence. Well, there are multiple fallback provisions within that sentence, and what I thought you were asking is the fallback provision that the parties agree is operative and is subject to the argument that is not permissible under the LIBOR Act. There are multiple fallback provisions in that one sentence. So how can we say it's clearly defined? It looks like the condition precedent is an inability to get daily quotes, and you're saying no, the statute requires clearly defined and practicable fallback, and the position has to be these investors that clearly everyone agrees wanted fixed to floating, they never get floating, and instead we're going to say you're going to get instead forever fixed. So we have to find out where is that clearly defined fallback, and we're struggling with the sentence that you're pointing to. You're saying the final clause is disassociated with the first clause. It's not disassociated with the first clause. The first clause is basically what it says is if LIBOR is not available. If you can't get LIBOR quotes. If you can't get quotes, isn't that the same phrase? We're going back and forth, but am I right or am I wrong? The beginning of the sentence is talking about banks getting LIBOR quotes. Yes, but you can't get LIBOR quotes if LIBOR is not available. So this is the provision that is operative if LIBOR is not available. If you can't, if LIBOR is not available, you can't get the quotes. So the condition. Congress is worried about Congress. Congress is saying legacy contracts where they were never thinking of anything other than LIBOR. Then they're going to get SOFR. And here it looks to me the final sentence that you're pointing to is still utterly in the world of LIBOR. Your Honor, I respectfully, I do not agree that that was what Congress was thinking about. Congress was thinking about agreements that would not work without LIBOR because there was no fallback provision in the agreement other than LIBOR. And my issue is what is that fallback, right? Because if there's no quotes, then you fall to the three-month LIBOR, the preceding period. And if the preceding period's rates are somehow still associated with LIBOR, then that's a problem. But they're not. They're not. And that is exactly what the last clause says. The last clause is for circumstances. Assuming that's a separate fallback. That doesn't refer in any way to LIBOR. It does not. It's a bit confusing, though, the way this is written. You'll have to concede that, right? It's not a model of clarity. Morgan Stanley has one that says if LIBOR is, words to the effect, if LIBOR is not available, you go back to the initial rate. And that would have been more clear. But that is the effect of this. If you walk through each of the different fallback provisions, and we do this in our brief, you first look for all the different LIBOR references. If those are unavailable, then you apply the preceding LIBOR three-month rate. If there's no preceding LIBOR three-month rate because LIBOR wasn't available, then you apply the rate in effect in the immediately preceding dividend period, which is the fixed rate. But the Morgan Stanley example, you're right, if it's unavailable. Then you're adhering to party agreement. Congress said we're not going to displace. I agree with your argument on the statute that way. But if instead the parties never contemplate LIBOR is unavailable, they think maybe quotations from banks would be unavailable for a day or two. Why isn't that smack in the world of what Congress is trying to protect? These investors get what they negotiated. All they're going to do is get SOFR. They just get another floating rate. We all know that is what they wanted. But that's not what the instrument requires. And I do not see that there's a difference. If you cannot get LIBOR quotes, if you can't get LIBOR quotes, you apply the fallback provisions, and you do them in order. And you get to the last one, and everyone agrees if you read the last one, it sends you back to the initial rate of 8%. But the statute says it's got to be clearly defined. We're having a lot of difficulty. It just perhaps suggests it's not clearly defined. The plaintiff thought it was clear that it sends you back to a fixed rate. Well, we're about to talk to them, and I've taken up your bubble time. I know you wanted to save some time, so I'll give you three minutes back. Okay, thank you. I didn't even get to the statutory interpretation issues. Look, I – obviously, no contract is perfect, but the language does say what it says. Thank you. When I was a young attorney, I was told the phrase, pigs get fat, hogs get slaughtered. And that's relevant because almost all of your briefs said there can never be a fixed rate. Congress, we know from the legislative history there can never be a fixed rate. And so opposing counsel is struggling here because your position was a statutory one, and my questions at least have been contractual. So did you preserve the contractual argument, accepting that we disagree with you statutorily, that parties could negotiate into a fixed rate? Did Congress left that up to you? How do you respond to that? May it please the Court. Catherine Pratsenakis of Dilworth Paxson on behalf of Appellee. Well, it's clear that Congress was looking to resolve legacy contracts that really had no clearly defined fallback for when LIBOR permanently ceases to exist. And the way that we believe the Act gives the parties that freedom to contract and potentially include a fixed rate fallback is actually the opt-out provision in 5804. Okay, so I think your beginning is sort of your effort to answer that, yes, they could potentially include it. I didn't really read that in your brief. So, sure, 5803F is where I want to direct the Court. It's not in the briefing, but it really goes to the question or the concern raised by my friend that Congress did not want to interfere with parties' freedom to contract. You're back in the statutory interpretation, Lana. I'm back in the statute. Let me go to the articles. But at some point, you're going to have to address the waiver. I think there's a reason you're back in the statute, right? Because as I understood the district court, the opinion in the district court and all the briefing here, everybody agrees that what that last provision does is take you back to the only other rate that could possibly exist here, which is the fixed rate. And the question is, is the fixed rate something that the statute permits? And when you go to the statute and you just read it, it's really hard to see how it doesn't fit exactly what we're talking about here when it talks about a benchmark comma or an interest rate or a dividend rate. So it's a complicated scheme in a complicated area. But how does it not just fit right within what the statute is saying? Okay. Well, would you like me to address the contractual concerns first? At some point. But why don't you start with Judge Preston's question? I could start with Judge Preston's question. Our contention is that the LIBOR Act tells us in several places that a fixed rate cannot serve as a benchmark replacement. We have a definition for benchmark replacement. No fixed rate. No fixed rate can ever serve. That a fixed rate cannot serve as a benchmark replacement for a legacy contract that did not contemplate the permanent cessation of LIBOR. I don't think the statute talks about the permanent, you know, just basically we have a situation where LIBOR is gone. So I don't think the statute is telling us that we have to know that the contractual parties here assume that particular circumstance. The contract just has to provide a fallback that meets the term benchmark replacement, right?  So 5801 does say that. But they use the phrase replacement benchmark rate when LIBOR is discontinued. Second, I want to draw your attention to Section 5804, which describes the replacement, an appropriate replacement, as being reasonable, comparable, or analogous rate index or term based on methodology similar or comparable to LIBOR with historical fluctuations substantially similar to LIBOR. We also have examples that Congress provided in Section 5803 of benchmark replacement. Congress points to SOFR, the federal funds rate, and the prime rate, which are all floating rates. In other words... These are talking about what SOFR should look like as compared to LIBOR. That's not the question here, right? The question is whether the contract meets one of the provisions for a permitted legacy contract under the term benchmark replacement. So we read 5804A a little broader than that. 5804A does speak to the board selected benchmark replacement. As well as any benchmark replacement conforming change. And that phrase ties back to the determining person. So if a contract doesn't have a workable fallback provision, and it doesn't designate a determining person to select the appropriate benchmark replacement, then we end up in the world of requiring the adoption of SOFR. I don't think Section 5804 was discussed at all in any of the briefing. It's certainly not yours. So apologies if it wasn't expressly made clear in the briefing. It occurred to us really from the reply brief that we needed to dig in a little more, because we saw the act as being very clear. We saw, if you read the whole text of this statute, you cannot discern that interest rate or dividend rate can mean a fixed rate. It's called the Adjustable Rate Interest Act. It's called, you know, it calls for, it tells you what Congress is looking for as a benchmark replacement in 5804. And it gives you examples in 5803. I think it's plainly clear. Where in the legislative record, even if we're going to look at it, does it show Congress wanted to displace informed, highly counseled? Let's say you've got Morgan Stanley, and at the end they say, you know, we can imagine LIBOR may turn out to be a corrupt system. So if that happens, we'll take a fixed rate. Congress meant to say that can't be done? Certainly, and LIBOR Act provides the ability of private parties to opt out. It does say you can opt out. It has to be expressly stated. And to an earlier question raised about the circumstances, when the articles were adopted and commenced selling the Penny Mac floating rates securities, no one knew that LIBOR was going to cease to exist. At that point in time, the U.K. Financial Conduct Authority hadn't raised the concern or provided an end date for LIBOR. So is your position your clients only thought they were going to go from fixed to floating, and they were going to get floating? The last thing they ever imagined would be they'd be stuck in the fixed land. Correct. But let's say you're wrong about the statute, and therefore we're looking at whether in fact they actually did contract clearly and practicably that they would settle back with their permanent fixed one. They're pointing to the final clause of 4G. Do you want to comment on that? Yes. 4G is a very narrow provision that all ties to LIBOR. But they're saying that there's a third fallback, the final fallback, right? And that stays because that only references the fixed rate. So how many fallback provisions do you read in this last sentence? So I see a waterfall for when LIBOR is not accessible, not for when LIBOR is extinct. And so it defines the entire section is really about, if you go to the first sentence, it's about the term three-month LIBOR and how to calculate the three-month LIBOR and what steps to take. If the screen is unavailable at 11 a.m. London time, we will go to this next step. Following that step, a different polling event occurs. So what's that last step? So the last step is if polling is unavailable from the New York banks, then if you're in the floating rate period, you use the last LIBOR. If you're not yet in the floating rate period because it's the dividend period immediately before, then you revert back to the rate that it was in the prior period, which had to be the fixed rate. But its purpose was so narrow. And was that rate in any way based on LIBOR? So that rate is not based on LIBOR because it doesn't look at the benchmark, but the entire provision is about finding the appropriate three-month LIBOR. Could you finish your sentence, the purpose was, you were going to say? So the purpose is actually extremely narrow. It looks at a point in time on March 14th for Series A and June 14th for Series B of 2024. If you're starting to float on the day that you're supposed to start to float and you don't have a LIBOR rate because the screen is inaccessible, you don't have a prior LIBOR rate to lean on because you're just now commencing the floating period. And so it was constructed just for that very narrow situation where LIBOR was unavailable on a certain inaccessible, not extinct, on this day, and there was polling was unavailable on this day. And because of where you are in the date of the determination, not having yet commenced actual floating, then you have to revert back to the fixed rate. I understand these points. It's what I thought. It's very sparingly touched on in your brief. Maybe because it's too complex financially, but you do mention it. You say, oh, this is temporary. It's when the screens are down, when it doesn't. It's touched on. Well, the complaint gives it quite a bit of consideration in our allegations. We really talk about the purpose of the act, how this is a legacy contract that was contemplated by the act to continue as a floating rate instrument because that was the intention here. So I had the question of clearly defined, and I put a lot of weight on that. It seems Congress wanted all these floating legacy contracts to go to SOFR. That just seems fair. Unless it is clearly defined like the Morgan Stanley or whoever it was that really were clear. If this is gone, we'll take this. But what about practicable? In other words, could your clients still redeem their shares if they never got into a floating period? Or do we have a huge practicability problem? It was mentioned in your brief. How do they redeem the shares if they never got into a floating period at all? So the redemption is triggered by Penny Mac's decision to redeem. There is no opportunity for an investor to say, this is not what I signed up for, other than just selling them in the open market and secondary market. And here, as we described, the secondary market for these floating rate notes took a hit when people realized they're no longer floating and they're not tracking SOFR. The issue to me is that you seem to be asking us to just revise the agreement because if it was going to be thought of, if LIBOR is unavailable, there's other floating rates one could have that you could define a floating rate. And that's not what the contract does. The contract sends you back to the rate that was in effect, which we all know what it was. It was a fixed rate. And so the question we're asking really is a statutory one, which is, is that something that's permitted under the statute? And I think that's where you have to persuade in saying, well, no, actually, if you look at this definition of benchmark replacement, it really has to mean a floating rate. And that's where I have difficulty just reading it, where the way it's structured and written, and it seems like that's not what it's saying. Well, the use of the word benchmark within the sentence, a benchmark comma or an interest rate or dividend rate, if we were to adopt my friend's interpretation that interest rate and dividend rate should be read broadly to include both benchmark rates and fixed rates, then that term benchmark in that sentence would be meaningless or superfluous. How is that the case? Because an interest rate could be benchmarked or not. But here it's saying benchmark. And we believe a better reading of that is that benchmark is defined above, right? So a benchmark requires an index. A fixed rate is not a benchmark rate. It can never be a benchmark rate. It has none of the attributes of SOFR. It also doesn't have the attributes that are demanded by the articles in 4A, which require a floating rate note. So the subsection 4G, again, limited purpose that doesn't undercut or outweigh the obligation here that there be a floating rate. And this was precisely why the LIBOR Act was created, to address legacy contracts that hadn't really contemplated the permanent cessation of LIBOR. I mean, you're reading a lot into the statute, right? I mean, the big problem was just there's contracts that are based on LIBOR, and LIBOR is gone. What is the interest rate going to be in those contracts? And you want to add on to that, and we want the interest rate to be SOFR. And that's true with respect to contracts that rely on LIBOR in any way. But if we have a contract that does not rely on LIBOR in any way, I think it's quite a bit to say what Congress was doing here was actually trying to change the interest rates that people had agreed to. Right. Here they agreed to a floating rate note that was based on LIBOR, and when LIBOR became permanently extinct, there was no workable benchmark replacement that would enable the continuation of this contract the way the parties contemplated. We thought the text was pretty clear that a fixed rate would not fit. It's unadjustable. It's nowhere in the whole text of this statute does it give the impression that a fixed rate is appropriate, whereas it gives multiple pieces of evidence throughout the statute that an adjustable rate is appropriate. A fixed rate is not a benchmark rate, and if we read or interest rate or dividend rate so broadly as to allow fixed rates, then we're undercutting the entire purpose of the statute, which was to prevent. Yeah, I think that's the debate, right? I mean, one purpose of the statute, one could say, is to change all rates to SOFR rates. Another purpose of the statute, a more narrow purpose, could be to provide a replacement for LIBOR rates and to allow certain kinds of permissible fallback rates. And it seems like the way the statute is structured is more of the latter. So if we don't, if you don't see the, if the whole text canon doesn't say to you all with provisions by, you know, the definition of benchmark, the examples given in 5803 and the attributes set forth in 5804, plus the provision in the act that allows people to opt out. So you have the right to contract to opt out and pursue your fixed rate. Here we're talking about investors who the entire basis of this investment decision was a floating rate. And that goes for Morgan Stanley investors as well. They, when, in this marketplace, there's a sense of competition that's protected by having this sort of consistency. And when you have a fixed rate note that's supposed to float, the expectation is that it's not going to revert back to its initial dividend rate. And so here Congress has all that. But there's a provision in the contract that does revert back. Yeah. So we ask that the court affirm the district court's ruling that it was not clear, and that 4A is actually abundantly clear, that PennyMAC is to pay a floating rate note starting on a specific date forward. The provision at 4G was really intended for the narrowest of purposes and had the financial conduct authority just decided to, well, let me just, you know, permanently cease LIBOR a year later, then this whole piece would be rendered obsolete. So, in other words, it's the random timing of when LIBOR ceased publication that this provision even ever takes effect because it would never get to this stage if the discontinuation of LIBOR took place after that initial first rate, first floating dividend rate period took effect. All right. Thank you, counsel.  All right. I'm going to go back to the issue that we were discussing. If you look at the statute, and we have it in the back of our brief, 12 U.S.C. 5802, Section 3, the definition of benchmark replacement. So this is the definition of benchmark replacement in the statute. And I'm going to skip the beginning part that we've all briefed about a benchmark replacement being a benchmark or an interest rate or a dividend rate. But then if you continue, it goes on to say, whether on a temporary, permanent, or indefinite basis under or with respect to the LIBOR contract. So it is talking about benchmark rates that are used to replace LIBOR, whether on a temporary, permanent, or indefinite basis. So I don't think there's anything in 4G that suggests that it is limited to circumstances when LIBOR is temporarily unavailable. It doesn't say that. It says if you can't get a quote, that's what it says. You couldn't get a quote. If you apply the provision as written, you revert back to the fixed rate. Counsel conceives that yet again. So if you look at this definition of benchmark replacement, it says that a viable benchmark replacement, so long as it otherwise complies with the Act, is a permissible fallback provision regardless of whether that benchmark replacement was temporary, permanent, or indefinite. So regardless of whether you read 4G as temporary, permanent, or indefinite, under the LIBOR Act, it is a benchmark replacement, and it is a benchmark replacement that still exists and should be applied, as PENNYMAC has done it, and there's nothing in the LIBOR Act that precludes PENNYMAC or mandates PENNYMAC. I think that's a good argument, and I agree. They didn't brief this extensively, so I had thought about that. I'm focused less on temporary than on what does the phrase clearly define mean, and doesn't it mean that investors get what they negotiated for, and they clearly stated that they would accept a fixed instead of floating rate? They negotiated for 4G, and the parties all agree what 4G says, and what you're referring to is in the purpose section of the statute. Well, no, I am focused on 4G. I hope that wasn't me. I apologize. I thought this phone was off. 4G doesn't seem to be a clearly defined, to me, acceptance of a fixed rate forever. In other words, it's all about how do the banks get quotes, and it's an access point. Well, it's the acceptance of a fixed rate if LIBOR is not available. If LIBOR is not available, that's where I have a little struggle. Well, but LIBOR was not available, and they applied it, and, again, counsel has agreed that that's how you interpret 4G. They don't like it. They think 4G should be voided under the LIBOR Act, but the plaintiff in the case has said that that's how you interpret the provision. And this is a motion to dismiss, and both parties agree it's a pure question of law, right? Sure, and we're going with the allegations on their complaint. And there's no case law, again, that you know of that explains why Congress wanted a clearly defined fallback. Well, it's in the purpose section. If you look at the operative provision that tells you, like, when you void the fallbacks, it just says if there doesn't exist a specific fallback provision. That's what it says. All right. Thank you very much, counsel, to both sides for your very helpful arguments in this interesting case. The matter is submitted, and court is adjourned. All rise. This court for this session stands adjourned.
judges: Higginson, NGUYEN, BRESS